UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AIMBRELL SHANKS,<br><br>        Plaintiff,<br><br>    v.<br><br>ABBOTT LABORATORIES, et al.,<br><br>        Defendants. | Case No.  5:15-cv-01151-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND REMANDING TO STATE COURT**<br><br>Re: Dkt. No. 29 |

Plaintiff Aimbrell Shanks ("Plaintiff") brings a number of employment-related causes of action against Defendants Abbott Laboratories, Abbott Vascular, Inc. (together, "Abbott"), Candy Barajas ("Barajas"), and Heather Dal Cielo ("Dal Cielo") (collectively, "Defendants").  In particular, Plaintiff alleges that Defendants harassed her and discriminated against her on account of her race, physical disability, medical condition, and age.  Plaintiff also alleges that Defendants failed to address Plaintiff's complaints and eventually terminated her employment in violation of public policy.

Now before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims.  Dkt. No. 29 ("Mot.").  Plaintiff has filed a written opposition to the motion.  Dkt. No. 34 ("Opp.").  The parties appeared for a hearing on this motion on July 21, 2016.  Dkt. No. 40.  Federal jurisdiction arises pursuant to 28 U.S.C. §§ 1331 and 1367.  After considering the parties' arguments, for the reasons below, the Court finds that Defendants have met their burden on most, but not all, of Plaintiff's claims.  Defendants' motion for summary judgment will be granted in part and denied in part, and the case will be remanded to state court for further proceedings.

1

Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

## I.  BACKGROUND

In compliance with the Court's standing order for civil cases, Defendants have submitted a separate statement of 15 pages or less containing the facts Defendants contend are not subject to dispute.  Dkt. No. 29-2.  Plaintiff has submitted a responsive separate statement disputing several of these facts.  Dkt. No. 34-2.  However, even though the Court's standing order requires that such a responsive statement "shall add no more than 5 pages" to the moving statement, Plaintiff's response adds nearly 40 pages.  The Court therefore does not consider the facts that Plaintiff cites in the responsive statement, except to note that Plaintiff disputes certain facts that Defendants contend are undisputed.  The summary of the relevant facts below consists largely of the genuinely undisputed facts.  However, where the Court discusses disputed facts, it will cite to the appropriate portion of the record.

Plaintiff is a woman of mixed race, though her coworkers perceived her as African-American.  Dkt. No. 29-6, Ex. A ("Pl. Dep."), at 78:21-79:2, 83:14-21; Dkt. No. 34-5 ("Pl. Decl."), ¶ 8.[1]  Plaintiff started with Abbott Vascular, Inc., a division of Abbott Laboratories, in 2006 as an accounts payable specialist.  Her employment contract indicated that her employment was at-will.  Dkt. No. 29-6, ECF p. 142.  In 2012, in light of Plaintiff's obesity, as well as pain and carpal tunnel syndrome, Abbott's workers' compensation medical specialist diagnosed Plaintiff with a physical disability and prescribed work restrictions, including stretching breaks of 2-3 minutes every 30 minutes between keyboarding activities as well as limiting her lifting to 5 pounds.[2]  From March 2008 until July 2014, except for a brief period in 2009, Barajas was Plaintiff's supervisor.

---

[1] Defendants make much of the fact that Plaintiff responded to a question about her race by saying that she is "a child of the rainbow."  Pl. Dep., 83:14-15, 84:23-25.  However, Plaintiff contends that Defendants discriminated against her because she is, among other things, African-American.

[2] Plaintiff contends in her briefing that the breaks were to be 15 minutes long, but the worker's compensation records reflect otherwise, and Plaintiff did not contradict the records in her deposition.  Dkt. No. 29-3, Ex. A; Dkt. No. 34-6, Ex. D at 92:2-3, 190:15-191:5.  Plaintiff also suggests that she was supposed to avoid lifting more than three pounds, but the records show a five-pound limitation, and in any case there is no testimony in the record that anyone ever violated this restriction.

2

Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

Barajas and Plaintiff did not get along.  Barajas made a number of comments about Plaintiff's obesity in front of their colleagues.  On six separate occasions, Barajas insisted that Plaintiff accompany Barajas and other members of the department on one-mile walks.  When Plaintiff declined because she could not walk so far, Barajas insisted that Plaintiff come to help Plaintiff lose weight.  Barajas stopped only after Plaintiff specifically asked her to do so.  Plaintiff was the oldest member of her department, and Barajas also made several comments about Plaintiff's age in one-on-one settings and in a staff meeting.  And when Plaintiff tried to set up a Latino affinity group at Abbott, Barajas told her that she was "African-American, not Latino."

Aside from these comments, Barajas belittled and demeaned Plaintiff in front of her colleagues on a regular basis.  At one point, Plaintiff had spent months organizing a guest speaker lunch session that 80 employees attended.  But in the middle of the session, and in the absence of any emergency, Barajas pulled Plaintiff out and told her to return to her desk and do work.  At other times, Barajas took other people in the department to lunch, where they discussed work-related issues, without inviting Plaintiff.  Barajas also timed Plaintiff's absences when she was away from her desk.  Barajas treated Plaintiff poorly during staff meetings, such as by calling Plaintiff's ideas "silly."  Although Barajas allowed other employees to take overtime, she routinely denied Plaintiff's requests for the same.

Barajas also interfered with Plaintiff's medical care.  Several times, Barajas asked Plaintiff to show Barajas her emails with her occupational health advisors.  Barajas repeatedly demanded that Plaintiff move medical appointments to non-work hours, although she did not ask this of other employees in the department.  On one occasion at work, Plaintiff began suffering shooting pains in her arm and her doctor told her to visit him immediately, but Barajas threatened to fire her if she left.  Plaintiff protested to the occupational nurse at Abbott, who told her to go to the doctor immediately the next time because she could have been having a heart attack.

In 2011 and 2013, Plaintiff filed workplace harassment complaints against Barajas.  In these complaints, Plaintiff said that Barajas had singled her out and treated her poorly, including

Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

1   by applying different standards to her performance, scolding her in front of her co-workers,

2   implicitly threatening to fire her, refusing to allow her overtime, intruding into her

3   communications with medical providers, and failing to adhere to Abbott's written policies.

4   Plaintiff also accused Barajas of discriminating against her for her race.

5        A few weeks after Plaintiff filed the 2013 complaint, and after Barajas learned of the

6   complaint, she filled out a negative performance evaluation of Plaintiff.[3]  Barajas indicated that

7   Plaintiff had only partially achieved expectations in that year, although Plaintiff's evaluations

8   from 2008 through 2012 mostly indicated that she had achieved expectations.  Plaintiff submitted

9   an addendum to her complaint in which she argued that the evaluation was unfair.

10       Dal Cielo was assigned to investigate the 2013 complaint.  Dkt. No. 29-7, Ex. C ("Dal

11  Cielo Dep. I"), at 10:8-11:6.  In doing so, she interviewed Plaintiff and Barajas on the phone as

12  well as several of their colleagues.  Dkt. No. 34-6, Ex. A ("Dal Cielo Dep. II"), at 17:16-20, 18:6-

13  9, 23:25-24:6, 42:15-43:8.  She eventually concluded that Plaintiff's complaints were largely

14  unfounded.  Dal Cielo Dep. I, at 119:4-19.  However, Dal Cielo found that other employees also

15  had complaints about Barajas.  Dal Cielo recommended to Barajas' manager that Barajas get

16  coaching on her management style and communication skills.  Id. at 45:11-46:8.

17       In 2014, Abbott's higher-ups decided to eliminate a number of positions throughout the

18  company.  An assistant controller, Kamal Trivedi, recommended that Plaintiff's group, the finance

19  group, should lay off 11 employees.  She and Maria Mulvoy, an HR specialist at Abbott, took part

20  in a process that identified Plaintiff as one of the employees to be laid off.  One of the factors in

21  the decision was the 2013 performance review.  They also decided to combine two positions, so

22  that Plaintiff's accounts payable position would be replaced by a new one that required a broader

23

24  [3] Defendants contend that the complaint was in response to the evaluation, but the undisputed
    dates do not bear out this assertion.  Plaintiff emailed Barajas on November 20, 2013, and told her
25  that Plaintiff wanted to contact Abbott's HR department about Barajas' poor treatment.  Dkt. No.
    34-6, Ex. H.  Barajas called HR herself later that day.  Id.  Plaintiff filed her formal complaint on
26  November 25, 2013.  Dkt. No. 29-6, ECF pp. 143-46.  Barajas submitted the evaluation in
    December.  Dkt. No. 29-7, ECF pp. 34-38.

27

28  Case No.: 5:15-cv-01151-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
    JUDGMENT AND REMANDING TO STATE COURT

4

United States District Court
Northern District of California

1   skillset, including accounting.  The new accounts payable position was filled by Stephanie Valdez

2   ("Valdez"), a 67-year-old Latina woman who was friends with Barajas and had previously been in

3   the accounts receivable department.  Valdez was an accountant, whereas Plaintiff was not.  Abbott

4   fired Plaintiff during this reorganization.

5         Plaintiff filed suit on January 23, 2015.  Dkt. No. 1, Ex. A ("Compl.").  On March 11,

6   2015, Defendants removed the case to this Court.  Dkt. No. 1.  Plaintiff alleges twelve causes of

7   action in her complaint: (1) discrimination in violation of Title VII of the Civil Rights Act of

8   1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) violations of an unspecified section of 42

9   U.S.C.; (3) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh Act"); (4)

10   disparate treatment in violation of the Fair Employment and Housing Act, Cal. Gov't Code

11   § 12940(a) ("FEHA"); (5) failure to accommodate in violation of the FEHA, Cal. Gov't Code

12   § 12940(m); (6) wrongful termination in violation of public policy; (7) civil harassment in

13   violation of Cal. Civ. Code § 527.6; (8) harassment in violation of the FEHA, Cal. Gov't Code

14   § 12940(j); (9) intentional infliction of emotional distress; (10) breach of an implied-in-fact

15   contract, only against Abbott; (11) negligence; and (12) negligent supervision.  Compl., ¶¶s 43-

16   328.  Defendants filed an answer to the removed complaint on March 11.  Dkt. No. 1.  They now

17   move for summary judgment on all claims.  See Mot.

18   **II.**     **LEGAL STANDARD**

19         A motion for summary judgment or partial summary judgment should be granted if "there

20   is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

21   law."  Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

22         The moving party bears the initial burden of informing the court of the basis for the motion

23   and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions,

24   or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v.

25   Catrett, 477 U.S. 317, 323 (1986).  If the issue is one on which the nonmoving party must bear the

26   burden of proof at trial, the moving party need only point out an absence of evidence supporting

27

28   Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1    the claim; it does not need to disprove its opponent's claim. Id. at 325.

2         If the moving party meets the initial burden, the burden then shifts to the non-moving party

3    to go beyond the pleadings and designate specific materials in the record to show that there is a

4    genuinely disputed fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. A "genuine issue" for

5    trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the

6    evidence in the light most favorable to that party, could resolve the material issue in his or her

7    favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

8         The court must draw all reasonable inferences in favor of the party against whom summary

9    judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

10   However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

11   testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. Id.

12   ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than

13   simply show that there is some metaphysical doubt as to the material facts."); Thornhill Publ'g Co.

14   v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving party must come

15   forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c).

16        "If the nonmoving party fails to produce enough evidence to create a genuine issue of

17   material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine

18   Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party

19   produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats

20   the motion." Id.

21   **III.    DISCUSSION**

22        **A.    Title VII and 42 U.S.C. Claims (Counts 1 and 2)**

23        Courts analyze disparate-treatment claims under the burden-shifting framework of

24   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Coghlan v. Am. Seafoods Co. LLC,

25   413 F.3d 1090, 1093-94 (9th Cir. 2005). "Under this analysis, plaintiffs must first establish a

26   prima facie case of employment discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151,

27

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

*United States District Court*
*Northern District of California*

1   1155 (9th Cir. 2010) (citing <u>Noyes v. Kelly Servs.</u>, 488 F.3d 1163, 1168 (9th Cir. 2007)).  To

2   establish a prima facie case, a plaintiff "must offer evidence that 'give[s] rise to an inference of

3   unlawful discrimination.'" <u>Id.</u> at 1156 (alteration in original) (quoting <u>Godwin v. Hunt Wesson,</u>

4   <u>Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998)).  The plaintiff "may do so by showing that (1) he

5   belongs to a protected class, (2) he was qualified for the position he held (or for the position to

6   which he wished to be promoted), (3) he was terminated or demoted from (or denied a promotion

7   to) that position, and (4) the job went to someone outside the protected class." <u>Coghlan</u>, 413 F.3d

8   at 1094 (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993); <u>McGinest v. GTE Serv.</u>

9   <u>Corp.</u>, 360 F.3d 1103, 1122 (9th Cir. 2004)).

10      If the plaintiff makes out a prima facie case, the defendant-employer must then "produce

11   admissible evidence showing that the defendant undertook the challenged employment action for a

12   'legitimate, nondiscriminatory reason.'"  <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018,

13   1028 (9th Cir. 2006) (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).  "[I]f the employer meets

14   that burden, then the <u>McDonnell Douglas</u> framework drops out of the picture entirely, and the

15   plaintiff bears the full burden of persuading the factfinder that the employer intentionally

16   discriminated against him." <u>Coghlan</u>, 413 F.3d at 1094 (citing <u>St. Mary's</u>, 509 U.S. at 507-08).

17      "In the context of employment discrimination law under Title VII, summary judgment is

18   not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a

19   preponderance of the evidence that the defendant undertook the challenged employment action

20   because of the plaintiff's race." <u>Cornwell</u>, 439 F.3d at 1028 (citing <u>Wallis v. J.R. Simplot Co.</u>, 26

21   F.3d 885, 889 (9th Cir. 1994)).  For example, "a plaintiff may defeat a defendant's motion for

22   summary judgment by offering proof that the employer's legitimate, nondiscriminatory reason is

23   actually a pretext for racial discrimination."  <u>Id.</u> at 1028-29 (citations omitted).  To satisfy this

24   standard, "plaintiffs may rely on circumstantial evidence, which . . . must be 'specific' and

25   'substantial' to create a genuine issue of material fact."  <u>Id.</u> at 1029 (quoting <u>Godwin</u>, 150 F.3d at

26   1222).

27

28   Case No.: <u>5:15-cv-01151-EJD</u>
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
     JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1    Although Plaintiff's complaint does not fully explain the theory underlying her Title VII

2    claim, it appears that Plaintiff alleges discrimination based on her race, physical characteristics,

3    age, and color.  Compl., ¶¶ 48-49, 61-62.  Plaintiff's second claim, which she brings under an

4    unspecified section of 42 U.S.C., focuses on racial discrimination.  Id., ¶¶ 84-85, 97-98.  Title VII

5    only bars discrimination based on an "individual's race, color, religion, sex, or national origin."

6    42 U.S.C. § 2000e-2(a)(1).  To the extent Plaintiff alleges discrimination based on her physical

7    characteristics or her disability, that conduct is not actionable under Title VII, and the Court will

8    grant summary judgment to Defendants.  However, the Court will consider Plaintiff's racial

9    discrimination claims in more detail.

10    At the outset, the Court notes that Plaintiff has failed to proffer any evidence that Barajas

11    was biased against Plaintiff because of Plaintiff's race.  To be sure, Plaintiff testified at deposition

12    that Barajas subjected Plaintiff to a number of indignities, including making several comments

13    about Plaintiff's weight and age, insulting her in front of their colleagues, excluding her from

14    meetings, violating her privacy, refusing to grant her overtime, ignoring her disability restrictions,

15    obstructing her from attending doctor's appointments, limiting her participation in employee

16    organizations, recommending her firing, and much more besides.  In all of this, however, Barajas

17    made only two references to Plaintiff's race.  When Plaintiff tried to set up a Latino employees'

18    group, Barajas said that Plaintiff was African-American, not Latino.  Another time, Barajas

19    mentioned that she and Plaintiff had the same skin tone.  These were not discriminatory or

20    belittling comments.  Cf. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918-19 (finding that a

21    comment about "old timers" did not support an inference of a discriminatory motive against older

22    employees).  Although Barajas may have held a personal animus against her, Plaintiff has adduced

23    no evidence that suggests that the animus arose from racial bias.[4]

24

25    [4] Plaintiff's complaint suggests that her first two claims also allege a racially discriminatory
      hostile work environment.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-17

26    (2002) (observing that a severe or pervasive pattern of discriminatory intimidation, ridicule, or
      insult may violate Title VII).  However, Plaintiff's opposition to this motion makes no mention of

27    a hostile work environment claim under Title VII or the legal standard that governs such claims.

28    Case No.: 5:15-cv-01151-EJD
      ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
      JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Nevertheless, Plaintiff has established a prima facie case for racial discrimination.

2    Defendants challenge her prima facie case on two grounds.  First, Defendants contend that

3    Plaintiff is not African-American because she answered a deposition question about her race by

4    referring to her "rainbow" mixed racial background.  However, in the same deposition she

5    clarified that she is African-American and that her colleagues perceived her as African-American.

6    Second, Defendants contend that Plaintiff was not replaced but that her position was eliminated.

7    Even assuming this is true, the fact remains that Plaintiff was fired and that Valdez was given a

8    position instead of Plaintiff.

9    However, Defendants have produced sufficient evidence that they took the challenged

10    actions for a legitimate, nondiscriminatory reason.  In particular, Defendants have submitted

11    deposition testimony that Abbott laid off 11 employees from Plaintiff's group as a cost-saving

12    measure.  During this process, an Abbott assistant controller recommended that the company

13    eliminate two of the three accounts payable roles from Plaintiff's immediate work group and

14    replace them with a single position to be filled by an employee who could also do accounting

15    work.  Weighing Plaintiff's negative 2013 performance review by Barajas, as well as the fact that

16    she was not an accountant, Abbott ultimately decided to fire Plaintiff and hire Valdez, who was an

17    accountant, to Plaintiff's former team.  Barajas was not directly involved in the process.  These

18    justifications were legitimate, and neither was based on Plaintiff's race.

19    Plaintiff assails this process because it placed undue weight on the purportedly biased

20    performance review, because it failed to take into account Plaintiff's complaints against Barajas,

21    and for a number of other reasons.  It may well be true that Abbott did not consider all of the

22    relevant circumstances before deciding to fire Plaintiff.  However, none of the defects that Plaintiff

23    cites had anything to do with Plaintiff's race.  Without such proof, either direct or circumstantial,

24    no reasonable jury could find that Abbott terminated Plaintiff because she was African-American.

25    _____

26    In any case, because Plaintiff has not shown a pattern of racial harassment, any hostile work
environment claim under Title VII would be futile.

27

28    Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

1    The Court will grant summary judgment to Defendants with respect to Plaintiff's Title VII and 42

2    U.S.C. claims.

3        **B.    Unruh Act Claim (Count 3)**

4        The Unruh Act does not apply to employment discrimination.  See Rojo v. Kliger, 52 Cal.

5    3d 65, 77 (1990) (citations omitted).  Plaintiff has agreed to the dismissal of her Unruh Act claim.

6    Opp. at 25.  The Court will grant summary judgment to Defendants with respect to this claim.

7        **C.    FEHA Claims (Counts 4, 5, and 8)**

8            **i.    Disparate Treatment**

9        "California has adopted the three-stage burden-shifting test established by the United

10   States Supreme Court [in McDonell Douglas] for trying claims of discrimination . . . based on a

11   theory of disparate treatment."  Guz v. Bechtel Nat'l Inc., 24 Cal. 4th 317, 354 (2000) (citations

12   omitted).  Because the same analytical framework governs claims under Title VII and the FEHA,

13   the Court's holding above that Plaintiff has failed to show any genuine dispute of fact with respect

14   to her claim for racial discrimination applies here as well.  However, Plaintiff also alleges

15   disparate treatment on the basis of her physical disability, which is a protected characteristic under

16   the FEHA but not under Title VII.  See 42 U.S.C. § 2000e-2(a)(1); Cal. Gov't Code § 12940(a).

17   The Court therefore considers only Plaintiff's physical disability discrimination claim here.

18           To make a prima facie case of disability discrimination under the FEHA, a plaintiff

19   generally "must provide evidence that (1) he was a member of a protected class, (2) he was

20   qualified for the position he sought or was performing competently in the position he held, (3) he

21   suffered an adverse employment action, such as termination, demotion, or denial of an available

22   job, and (4) some other circumstance suggests discriminatory motive."  Guz, 24 Cal. 4th at 355

23   (citations omitted).  If the plaintiff establishes a prima facie case, "the burden shifts to the

24   defendant to [articulate a] legitimate nondiscriminatory reason for its employment decision."

25   Wills v. Superior Court, 195 Cal. App. 4th 143, 160 (2011) (alteration in original) (quoting

26   Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 342-43 (2008)).  Once the employer makes such a

10

United States District Court
Northern District of California

1  showing, to avoid summary judgment, "an employee claiming discrimination must offer

2  substantial evidence that the employer's stated nondiscriminatory reason for the adverse action

3  was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a

4  combination of the two, such that a reasonable trier of fact could conclude the employer engaged

5  in intentional discrimination." Id. (quoting Hersant v. Dep't of Soc. Servs., 57 Cal. App. 4th 997,

6  1004-05 (1997)).

7        The Court has already discussed the first two steps in the context of Plaintiff's Title VII

8  claims.  Again, Plaintiff has proffered evidence that she was disabled, that she was qualified for

9  her position, that she was fired, and that her effective replacement was not disabled.  Defendants,

10  meanwhile, have satisfied their burden of showing a legitimate, nondiscriminatory reason for the

11  employment decision.

12        On the third step of the McDonnell Douglas analysis, however, the Court reaches a

13  different result.  Although Plaintiff has not adduced any evidence of racial discrimination, she has

14  shown that Barajas treated her differently because of her obesity.[5]  Barajas repeatedly asked

15  Plaintiff to accompany the team on one-mile walks; when Plaintiff refused because she was not

16  physically capable, Barajas insisted that it was important for Plaintiff to lose weight.  This

17  happened often enough that Plaintiff was forced to ask Barajas to stop.  At other times, Barajas

18  commented in front of their coworkers that Plaintiff needed to lose weight.  These actions could

19  lead a reasonable jury to conclude that Barajas bore discriminatory intent toward Plaintiff because

20  of her disability.

21        Critically, the jury could also infer that this intent affected the negative performance

22  evaluation in 2013.  Cf. Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1061-62 (2005)

23  (finding triable issues of fact in a retaliation case where an employee received a poor performance

24

25  [5] In general, "an individual who asserts a violation of the FEHA on the basis of his or her weight
   must adduce evidence of a physiological, systemic basis for the condition." Cassista v. Cmty.

26  Foods, Inc., 5 Cal. 4th 1050, 1065 (1993). Although Plaintiff has not provided such evidence,
   Defendants do not contest that Plaintiff may base a FEHA claim on her obesity.

27

28
   Case No.: 5:15-cv-01151-EJD
   ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
   JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1   evaluation after a confrontation with her supervisor). Of course, "subjective evaluations are not

2   unlawful per se," and, by themselves, "their relevance to proof of a discriminatory intent is weak."

3   Coleman v. Quaker Oats Co., 232 F.3d 1271, 1285 (9th Cir. 2000) (quoting Sengupta v. Morrison-

4   Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th Cir. 1986)). But "[w]here termination decisions rely

5   on subjective evaluations, careful analysis of possible impermissible motivations is warranted

6   because such evaluations are particularly 'susceptible of abuse and more likely to mask pretext.'"

7   Xin Liu v. Amway Corp., 347 F.3d 1125, 1136-37 (9th Cir. 2003) (quoting Weldon v. Kraft, Inc.,

8   896 F.2d 793, 798 (3d Cir. 1990)). Because the same supervisor who allegedly mistreated

9   Plaintiff based on her physical disability also filled out the negative evaluation, and because the

10  negative evaluation played a role in Abbott's decision to fire Plaintiff, the jury could reasonably

11  find that the termination was, albeit indirectly, the result of discriminatory bias.

12        The parties informed the Court at the hearing on this motion that they have agreed that this

13  cause of action may proceed only against Abbott. The Court will grant summary judgment on this

14  claim only to the extent it alleges racial discrimination, and in its entirety as against Barajas and

15  Dal Cielo.

16                    **ii.    Failure to Accommodate**

17        Under the FEHA, an employer must "make reasonable accommodation for the known

18  physical or mental disability of . . . an employee." Cal. Gov't Code § 12940(m)(1). "The

19  elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA,

20  (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer

21  failed to reasonably accommodate the plaintiff's disability." Lui v. City & County of San

22  Francisco, 211 Cal. App. 4th 962, 971 (2012) (quoting Scotch v. Art Inst. of Cal., 173 Cal. App.

23  4th 986, 1009-10 (2009)).

24        "A reasonable accommodation is 'a modification or adjustment to the workplace that

25  enables the employee to perform the essential functions of the job held or desired.'" Id. (quoting

26  Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App. 4th 952, 974 (2008)). An employer

27

28
Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1    need not "choose the best accommodation or the specific accommodation the employee seeks."

2    Wilson v. County of Orange, 169 Cal. App. 4th 1185, 1194 (2009).  "Instead, 'the employer

3    providing the accommodation has the ultimate discretion to choose between effective

4    accommodations, and may choose the less expensive accommodation or the accommodation that

5    is easier for it to provide.'"  Id. (quoting Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 226

6    (1999)).  "Ordinarily, the reasonableness of an accommodation is an issue for the jury."  Prilliman

7    v. United Air Lines, Inc., 53 Cal. App. 4th 935, 954 (1997) (quoting Schmidt v. Safeway, Inc., 864

8    F. Supp. 991, 997 (D. Or. 1994)).

9            The parties agree that Plaintiff applied for and received a number of accommodations for

10    her physical disabilities, which included pain and carpal tunnel syndrome in addition to her

11    obesity.  These included an ergonomic workstation, an ergonomic chair, a keyboard, a wrist

12    support, and a new monitor.  However, Plaintiff contends that Barajas interfered with several other

13    accommodations that Plaintiff's doctor had ordered.  In particular, Plaintiff was to take two-to-

14    three-minute breaks every 30 minutes and walk around the office.  Nevertheless, on three

15    occasions Plaintiff suggests that Barajas intentionally gave Plaintiff urgent work to do just as

16    Plaintiff was about to take a scheduled break.  Even taking Plaintiff's testimony as true, although

17    these actions may support Plaintiff's claim for harassment, a few isolated interferences with

18    Plaintiff's breaks did not materially affect the reasonableness of the accommodations that Abbott

19    accorded Plaintiff.  Barajas' conduct does not create a genuine issue of fact that the jury must

20    resolve.  The Court will grant summary judgment to Defendants on the FEHA failure to

21    accommodate claim.

22            **iii.    Harassment**

23            The FEHA prohibits harassing an employee because of her "race," "physical disability,"

24    "medical condition," or "age."  Cal. Gov't Code § 12940(j)(1).  An employer may be responsible

25    for such harassment "if the entity, or its agents or supervisors, knows or should have known of this

26    conduct and fails to take immediate and appropriate corrective action."  Id.  In contrast to

27

28    Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1  discrimination, "harassment focuses on situations in which the *social environment* of the

2  workplace becomes intolerable because the harassment (whether verbal, physical, or visual)

3  communicates an offensive message to the harassed employee."  Roby v. McKesson Corp., 47

4  Cal. 4th 686, 706 (2009).

5        To prevail on a FEHA harassment claim, a plaintiff must demonstrate that she was

6  subjected to verbal or physical conduct related to a protected characteristic, that the conduct was

7  unwelcome, and that the conduct was "sufficiently severe or pervasive to alter the conditions of

8  her employment and create an abusive work environment."  Lyle v. Warner Bros. Television

9  Prods., 38 Cal. 4th 264, 279 (2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

10  "[T]he existence of a hostile work environment depends upon 'the totality of the circumstances.'"

11  Hughes v. Pair, 46 Cal. 4th 1035, 1044 (2009) (quoting Miller v. Dep't of Corr., 36 Cal. 4th 446,

12  462 (2005)).  A hostile work environment "must be both objectively and subjectively offensive,

13  one that a reasonable person would find hostile or abusive, and one that the victim in fact did

14  perceive to be so."  Lyle, 38 Cal. 4th at 284 (quoting Faragher v. City of Boca Raton, 524 U.S.

15  775, 787 (1998)).  "[T]he employee must show a concerted pattern of harassment of a repeated,

16  routine, or a generalized nature."  Id. at 283-84 (citing Aguilar v. Avis Rent A Car Sys., Inc., 21

17  Cal. 4th 121, 131 (1999)).

18        Here, Plaintiff has testified in great detail to Barajas' belittling conduct, which the Court

19  has described above.  Defendants correctly observe that, like Title VII, the FEHA does not protect

20  employees from harassment or discrimination based merely on "personality conflicts," "snubbing

21  by supervisors and co-workers," or "simple lack of good manners."  Cozzi v. County of Marin,

22  787 F. Supp. 2d 1047, 1067-68 (N.D. Cal. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v.

23  White, 548 U.S. 53, 68 (2006)).  Much of the alleged conduct falls in this category.  For example,

24  for the most part, Barajas' comments about Plaintiff's race and age were merely impolite.  At

25  worst, these incidents were "occasional, sporadic, isolated, or trivial," and they cannot support a

26  FEHA harassment claim.  Hughes, 46 Cal. 4th at 1048-49 (quoting Lyle, 38 Cal. 4th at 283).

27

28
Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

7

8

9

      However, on many occasions, Barajas' conduct focused on Plaintiff's obesity, a protected characteristic in this case.  Barajas attempted to force Plaintiff to come for walks at least six times over Plaintiff's last two years, and Barajas commented on Plaintiff's weight on a number of other occasions.  Plaintiff has also testified that Barajas regularly and intentionally interfered with the breaks Plaintiff required due to her disability.  A reasonable jury could find that these incidents constituted "more than a few isolated incidents of harassing conduct," such that the "conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive.'"  Id. at 1043 (quoting Miller, 36 Cal. 4th at 462). They may support a FEHA harassment claim.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      Moreover, the jury could reasonably infer that Plaintiff's disability or medical condition caused Barajas' other demeaning and insulting behavior, including leaving Plaintiff out of social events, berating her in front of others, denying her overtime, and so on.  The California Supreme Court's decision in Roby, 47 Cal. 4th 686, is instructive.  There, the plaintiff had a medical condition that caused panic attacks that often made her miss work unexpectedly.  Id. at 694-95. Her medication led to an unpleasant body odor, and she also developed a nervous disorder that caused her to dig her fingernails into her arms and create open sores.  Id. at 695.  Her supervisor made negative comments about her body odor and sores, ignored her at staff meetings, shunned her socially, reprimanded her in front of her coworkers, and openly belittled her in and out of her presence.  Id.  The California Supreme Court held that the evidence that the plaintiff's supervisor knew about the plaintiff's medical condition and repeatedly made disparaging comments about it supported the inference that the supervisor's overall hostility stemmed from the plaintiff's medical condition.  Id. at 710-11.  As a result, the Roby court upheld a jury verdict that the supervisor had harassed the plaintiff in violation of the FEHA.  Id. at 711.

24

25

26

27

28

      This case is remarkably similar to Roby.  Defendants attempt to distinguish Roby solely on the basis that the Roby supervisor subjected her employee to hostility on a more regular basis than Barajas did.  But the evidence, taken in the light most favorable to Plaintiff, does suggest continual

United States District Court
Northern District of California

15

Case No.: 5:15-cv-01151-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO STATE COURT

1    and consistent poor treatment on a daily or weekly basis.  Moreover, even if the hostility was less

2    pervasive than in <u>Roby</u>, the difference is one of degree, not kind.  The question here is only

3    whether a reasonable jury could find that Plaintiff was harassed under the FEHA.  Like the

4    supervisor in <u>Roby</u>, Barajas acted poorly towards Plaintiff on numerous occasions, and Barajas

5    made disparaging comments about her medical condition.  Whether Barajas behaved in that way

6    because of Plaintiff's disability or medical condition and whether the conduct as a whole rose to

7    the level of harassment are questions that the jury must resolve.

8         The Court will deny summary judgment as to Plaintiff's claim for harassment on the basis

9    of her disability or medical condition in violation of the FEHA.  However, because Plaintiff has

10   alleged no harassment by Dal Cielo, the Court will grant summary judgment to her on this claim.

11        **D.    Wrongful Termination (Count 6)**

12        In California, "when an employer's discharge of an employee violates fundamental

13   principles of public policy, the discharged employee may maintain a tort action."  <u>City of</u>

14   <u>Moorpark v. Superior Court</u>, 18 Cal. 4th 1143, 1158 (1998) (quoting <u>Tameny v. Atl. Richfield</u>

15   <u>Co.</u>, 27 Cal. 3d 167, 170 (1980)).  "The policy 'must be: (1) delineated in either constitutional or

16   statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather

17   than serving merely the interests of the individual; (3) well established at the time of the discharge;

18   and (4) substantial and fundamental.'"  <u>Id.</u> at 1159 (quoting <u>Stevenson v. Superior Court</u>, 16 Cal.

19   4th 880, 894 (1997)).

20        The California Supreme Court has held explicitly that "disability discrimination can form

21   the basis of a common law wrongful discharge claim."  <u>Id.</u> at 1161.  However, neither Plaintiff's

22   complaint nor her opposition to this motion appears to base her wrongful termination claim on her

23   claim for disability discrimination.  As a result, Plaintiff has not "sufficiently alleged essential

24   facts to inform [Defendants] that [s]he [is] alleging a common law cause of action for wrongful

25   termination in violation of FEHA's public policy against disability discrimination."  <u>Prue v. Brady</u>

26   <u>Co./San Diego, Inc.</u>, 242 Cal. App. 4th 1367, 1379 (2015).

27

28   Case No.: <u>5:15-cv-01151-EJD</u>
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
     JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

1    Plaintiff's complaint does allege, however, that the termination "was intentionally

2   motivated by Plaintiff's complaints and/or whistle blowing."  Compl., ¶ 213.  The complaint also

3   cites four state statutes, including Cal. Lab. Code § 232.5(c), which prohibits "discriminat[ion]

4   against an employee who discloses information about the employer's working conditions."

5   Plaintiff's opposition to this motion also focuses exclusively on Defendants' alleged violations of

6   § 232.5.  The Court therefore interprets Plaintiff's wrongful termination claim to allege that

7   Defendants fired her in retaliation for her complaint against Barajas.

8    This claim is not viable for several reasons.  First, a California appellate court has held an

9   identical claim to be preempted by federal law.  See Luke v. Collotype Labels USA, Inc., 159 Cal.

10   App. 4th 1463 (2008).  Second, Plaintiff makes no meaningful attempt to show why or how a

11   § 232.5 violation can underlie a wrongful termination claim, which is not clear under California

12   law.  See Doubt v. NCR Corp., No. 09-cv-5917-SBA, 2014 WL 3897590, at *9 (N.D. Cal. Aug. 7,

13   2014).  Third, Plaintiff has made no showing that internal complaints, as opposed to public

14   disclosures, are protected under § 232.5.  For all of these reasons, the Court will grant summary

15   judgment to Defendants on this claim.

16    **E.    Civil Harassment (Count 7)**

17    Cal. Civ. Code § 527.6 provides that a petitioner may obtain injunctive relief to prevent

18   harassment.  Because Plaintiff is not a current employee, injunctive relief is irrelevant.  Plaintiff

19   has agreed to the dismissal of her civil harassment claim.  Opp. at 25.  The Court will grant

20   summary judgment as to this claim.

21    **F.    Intentional Infliction of Emotional Distress (Count 9)**

22    "To state a cause of action for intentional infliction of emotional distress, the plaintiff must

23   allege (1) extreme and outrageous conduct with the intention of causing, or reckless disregard of

24   the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

25   emotional distress; and (3) actual and proximate causation of the emotional distress by the

26   defendant's outrageous conduct."  Mintz v. Blue Cross of Cal., 172 Cal. App. 4th 1594, 1607-08

27

28   Case No.: 5:15-cv-01151-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
     JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

17

1    (2009) (citing Hailey v. Cal. Physicians' Serv., 158 Cal. App. 4th 452, 473-74 (2007)).  The

2    defendant's conduct must be "so extreme and outrageous 'as to go beyond all possible [bounds] of

3    decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  Id. at

4    1608 (alteration in original) (quoting Hailey, 158 Cal. App. 4th at 474).  "Behavior may be

5    considered outrageous if a defendant . . . abuses a relation or position which gives him power to

6    damage the plaintiff's interest."  Hailey, 158 Cal. App. 4th at 474 (quoting Agarwal v. Johnson, 25

7    Cal. 3d 932, 946 (1979)).

8           Plaintiff has not established that Barajas' conduct was extreme and outrageous enough to

9    support an IIED claim.  As badly as Barajas may have treated Plaintiff, no reasonable jury could

10   find that Barajas went beyond all possible bounds of decency or that her actions would be utterly

11   intolerable in a civilized society.  The case that Plaintiff cites, Alcorn v. Anbro Eng'g, Inc., 2 Cal.

12   3d 493 (1970), proves the point.  In Alcorn, the African-American employee's Caucasian

13   superintendent hurled a stream of racial slurs at the employee and fired him on the spot.  Id. at

14   496-97.  The California Supreme Court acknowledged "that mere insulting language, without

15   more, ordinarily would not constitute extreme outrage," but it held that "the aggravated

16   circumstances alleged by plaintiff seem sufficient" to overcome a motion to dismiss.  Id. at 499 &

17   n.5.  Nothing Barajas may have done rose to this level.  The Court will grant summary judgment

18   to Defendants on this claim.

19          **G.    Breach of Contract (Count 10)**

20           "To prove a cause of action for breach of contract under California law, a party must plead

21   the existence of a contract, plaintiff's performance of that contract or excuse for failure to perform,

22   defendant's breach, and damage to plaintiff resulting therefrom."  Bay Area Roofers Health &

23   Welfare Trust v. Sun Life Assurance Co. of Can., 73 F. Supp. 3d 1154, 1161 (N.D. Cal. 2014)

24   (citing McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006)).  Independent of an

25   express, written employment agreement, an employer and employee may bind themselves to

26   contracts implied by their course of conduct.  See Foley v. Interactive Data Corp., 47 Cal. 3d 654,

27

28   Case No.: 5:15-cv-01151-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY
     JUDGMENT AND REMANDING TO STATE COURT

United States District Court
Northern District of California

679-82 (1988).  "[T]he totality of the circumstances determines the nature of the contract."  <u>Id.</u> at 681.  The existence of an implied contract "is usually a question of fact."  <u>Unilab Corp. v. Angeles-IPA</u>, 244 Cal. App. 4th 622, 636 (2016) (quoting <u>Gorlach v. Sports Club Co.</u>, 209 Cal. App. 4th 1497, 1508 (2012)).

Plaintiff bases her claim on the discrimination and harassment policy, which she contends obligated Abbott to protect against discrimination and properly investigate any employee complaints.  Plaintiff argues that Dal Cielo's failure to investigate her complaint breached the contract implied by the Abbott policy.[6]

Defendants have sufficiently established the absence of a genuine issue of fact.  The discrimination policy explicitly indicated that it did not modify the employment relationship.  <u>See</u> Dkt. No. 29-5, Ex. D.  No reasonable jury could find that Abbott intended to be contractually bound by the terms of the policy.

Even if the policy did form an implied-in-fact contract, Dal Cielo sufficiently investigated Plaintiff's claim.  Plaintiff contends that Dal Cielo should have interviewed more employees and conducted her interviews in person.  Plaintiff also takes issue with the depth of Dal Cielo's knowledge of Plaintiff's complaint.  However, the policy set a low bar; it said only that "[a]ny reported allegation of harassment, discrimination or retaliation will be investigated promptly."  <u>Id.</u> at 4.  Dal Cielo undertook a good-faith investigation, in the course of which she spoke to Plaintiff several times and to all of her colleagues who worked with Barajas.  Although Plaintiff may disagree with the outcome of the investigation, no reasonable jury could find that Dal Cielo did not investigate the complaint.  The Court will grant summary judgment on Plaintiff's breach of contract claim.

---

[6] Plaintiff also asserts in her opposition to this motion that her firing breached Abbott's termination policy, but she did not make this claim in her complaint.  Compl., ¶¶s 284-302.  The Court does not consider the allegation now.

United States District Court
Northern District of California

**H.     Negligence and Negligent Hiring (Counts 11 and 12)**

"California does not . . . recognize a common law tort claim for a supervisor's negligent failure to prevent discrimination." Ambrosini v. Universal Cable Holdings, Inc., No. 14-cv-0896-RS, 2014 WL 3362244, at *3 (N.D. Cal. July 7, 2014) (citing Hine v. Dittrich, 228 Cal. App. 3d 59, 64 (1991); Butler v. Sears Roebuck & Co., No. 92-cv-1842-FMS, 1992 WL 364779, at *2-3 (N.D. Cal. Oct. 20, 1992)).  Instead, as Plaintiff acknowledges in her opposition, these claims may be "brought under FEHA, which prohibits the failure to prevent discrimination." Id. (citing Cal. Gov't Code § 12940(k)).  Courts are reluctant to "create an additional negligence cause of action when the California legislature has already provided a comprehensive statutory remedy." Butler, 1992 WL 364779, at *2; see Ambrosini, 2014 WL 3362244, at *3.

This Court agrees that separate negligence remedies are not needed.  Although Plaintiff attempts to distinguish between a failure to investigate and a failure to prevent harassment, the Ninth Circuit has held that an employer may be liable under Title VII for failing to investigate and remedy harassing conduct after learning of it.  See Galdamez v. Potter, 415 F.3d 1015, 1022 (9th Cir. 2005).  California courts read the FEHA's anti-harassment provisions in keeping with federal courts' interpretations of Title VII.  Miller, 36 Cal. 4th at 463; see also Lee v. Eden Med. Ctr., 690 F. Supp. 2d 1011, 1024-25 (N.D. Cal. 2010) (considering a FEHA claim for failure to investigate complaints of racial harassment with reference to Title VII cases).  Because the failure to investigate a harassment complaint is actionable under the FEHA, Plaintiff may not bring separate negligence causes of action alleging the same harm.  The Court will grant summary judgment on these claims.

**IV.     ORDER**

The motion for summary judgment is GRANTED as to Plaintiff's first, second, third, fifth, sixth, seventh, ninth, tenth, eleventh, and twelfth causes of action.  As to Plaintiff's fourth cause of action for disparate treatment in violation of the FEHA, the motion is GRANTED as against Barajas and Dal Cielo and to the extent it alleges racial discrimination, but it is DENIED to the extent the claim alleges disparate treatment by Abbott on the basis of Plaintiff's physical disability

20

1   or medical condition.  Similarly, as to Plaintiff's eighth cause of action for harassment in violation

2   of the FEHA, the motion is GRANTED as against Dal Cielo and to the extent it alleges racial

3   harassment, but it is DENIED to the extent the claim alleges harassment by Barajas and Abbott on

4   the basis of Plaintiff's physical disability or medical condition.

5           This disposition also requires the Court to remand the case to state court.  The Court had

6   subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367 because Plaintiff's

7   first two claims arose under federal law and because the remaining claims formed part of the same

8   case or controversy.  However, because the Court has granted summary judgment against Plaintiff

9   on the federal claims, there is no longer any basis for subject matter jurisdiction in federal court.

10  Under 28 U.S.C. § 1447(c), the Court must remand the case to the originating state court "[i]f at

11  any time before final judgment it appears that the district court lacks subject matter jurisdiction."

12  Accordingly, the case is REMANDED for further proceedings.  The clerk shall remand this action

13  to Santa Clara County Superior Court and close this file.

14          **IT IS SO ORDERED.**

15  Dated: July 21, 2016

16  _____

17  EDWARD J. DAVILA
    United States District Judge

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

21